# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

THE CORNUCOPIA INSTITUTE )
)
Plaintiff, )
)
v. )    Civil Action No. 16-215 (RMC)
)
UNITED STATES DEPARTMENT )
OF AGRICULTURE, )
)
Defendant. )
_____ )

## MEMORANDUM OPINION

       The Cornucopia Institute brings suit pursuant to the Freedom of Information Act (FOIA), 5 U.S.C § 552 (2012), against the Agriculture Management Service of the Department of Agriculture National Organic Program, challenging the adequacy of that agency's response to its FOIA request. Both parties move for summary judgment and The Cornucopia Institute (Cornucopia) also requests *in camera* review of 34 records to determine the adequacy of the redactions. The Court will grant the agency's motion for summary judgment and deny Cornucopia's motion for summary judgment and *in camera* review.

## I. BACKGROUND

       The Cornucopia Institute is a national nonprofit organization focused on public interest farm policy that researches and investigates a range of issues from sustainable agricultural practices to organic certification policies. Declaration of Will Fantle (Fantle Decl.) [Dkt. 20] ¶ 4. In its investigative role, Cornucopia took a tour of Shamrock Farm Dairies (Shamrock) in late 2008 to determine if the company was in compliance with its organic certificate. *Id*. ¶ 9. On October 12, 2008, after determining that Shamrock was not in

compliance, Cornucopia filed a complaint with the United States Department of Agriculture (USDA) National Organic Program (NOP) to alert the Agriculture Management Service (AMS or Service) that Shamrock had violated its organic certificate. *Id*. ¶ 10. In November and December 2011, Cornucopia learned from NOP Deputy Director Miles McEvoy that the investigation based on Cornucopia's complaint about Shamrock, and two other organic corporations—Oskri Organics (Oskri) and JAV Food Corporation (JAV)—had been closed. *See id*. ¶ 12; Fantle Decl. Ex. 2 [Dkt. 21] at 9.[1] On January 24, 2012, Cornucopia filed a FOIA request with AMS, asking for records pertaining to the NOP investigations into JAV, Oskri, and Shamrock. *See* Amended Declaration of Matthew Michael (Michael Am. Decl.) [Dkt. 17-1] ¶ 5. AMS assigned the request FOIA case number 2012-AMS-01320-F. *See id*.

### A. The AMS Initial Search for Responsive Records

AMS began providing records related to Oskri Organics and JAV Food Corporation on April 19, 2012; on February 3, 2014, AMS sent a final letter stating that all of the records relating to Oskri and JAV had been turned over either fully or partially with redactions under FOIA Exemptions 4, 5, and 6. *See* Michael Am. Decl. ¶ 6; Michael Am. Decl. Attach. B [Dkt. 15-2] at 1. In the same letter, AMS stated that it was withholding all records relating to Shamrock under FOIA Exemption 7(A) because the investigation was ongoing. *See* Michael Am. Decl. ¶ 6; Michael Am. Decl. Attach. B at 7.

### B. Cornucopia's Appeal to AMS

On February 26, 2014, Cornucopia appealed the withholding of records relating to Shamrock. *See* Michael Am. Decl. ¶ 7. Cornucopia argued it had an email from Mr. McEvoy

---

[1] All page number references to Fantle Declaration Exhibits are to the electronic case filing (ECF) page number.

confirming that AMS completed the Shamrock investigation in December 2011 and, therefore, withholding the records was unjustified. *See* Michael Am. Decl. Attach. C [Dkt. 15-3] at 1. On April 22, 2014, AMS informed Cornucopia that it received the FOIA appeal but that its review would not be completed for several months. *See* Fantle Decl. Ex. 2 at 8. AMS also advised Cornucopia to withdraw its appeal and submit a new FOIA request after AMS finished the Shamrock investigation. Fantle Decl. ¶ 17. On April 24, 2014, Cornucopia ignored AMS's suggestion and reiterated that Cornucopia had an email showing the Shamrock investigation concluded in December 2011. *See* Fantle Decl. Ex. 2 at 6-7. On April 25, 2014, AMS responded, denying that the Shamrock investigation had closed but agreeing to process Cornucopia's FOIA request. *See id*. at 6. Cornucopia responded the same day with a copy of the email it received from Mr. McEvoy in December 2011. *See* Fantle Decl. ¶ 17.

Between May 13, 2014 and June 30, 2014, AMS searched additional databases and identified 595 records relating to the Shamrock investigation. Michael Am. Decl. ¶ 7. In conducting this search, AMS used the search terms "Shamrock" and "NOPC-003-09," and looked through "hardcopy casefiles, NOP's electronic shared drive, the electronic NOP complaint database, the electronic and hardcopy files of the investigator and the [Compliance & Enforcement] C&E Director, and the email archives of the investigator and the C&E Director." Second Declaration of Matthew Michael (Michael 2d Decl.) [Dkt. 25-1] ¶ 5. On May 18, 2015 and July 9, 2015, Cornucopia contacted AMS for updates on the appeal and AMS responded that it was still processing the records. *See* Fantle Decl. ¶¶ 18-19; Fantle Decl. Ex. 3 [Dkt. 21] at 11.

## C. Cornucopia Files Current Lawsuit

On February 9, 2016, after not receiving any additional records from AMS, Cornucopia filed this action. *See* Compl. [Dkt. 1]. Between May 6, 2016 and May 16, 2016, AMS located an additional 2,213 records, using the same search terms and databases as its 2014

search. Michael Am. Decl. ¶ 8. Between May 31, 2016 and September 30, 2016, AMS released 2,808 responsive records, providing 2,135 pages in their entirety and 673 pages partially redacted under FOIA Exemptions 5, 6, and 7. *See id.*; *see also* Michael 2d Decl. ¶ 8.

On October 13, 2016, AMS provided Cornucopia with the complete bate-stamped record and a *Vaughn* Index.[2] Michael Am. Decl. ¶ 8. However, Cornucopia states that it did not receive these records until AMS filed its Motion for Summary Judgment on March 8, 2017.[3] Fantle Decl. ¶ 23.

AMS moved for summary judgment on February 2, 2017 asserting that it had sent all responsive records to Cornucopia in response to the 2012 FOIA request. *See* Mot. Cornucopia opposed and filed a cross motion for summary judgment on April 4, 2017, challenging the timeliness of AMS's response to the FOIA request, adequacy of the search, withholdings under FOIA Exemptions, and segregability, and requesting an *in camera* review of 34 records. *See* Pl.'s Mem. of Points and Auths. in Supp. of Pl.'s Mot. for Summ. J. and in Opp'n to Def.'s Mot. for Summ. J. (Opp'n) [Dkt. 18-1]. AMS filed its combined opposition and reply on May 15, 2017. *See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. and Opp'n to Pl.'s Cross-Mot. for Summ. J. (Reply) [Dkt. 25]. The matter is ripe for decision.

---

[2] *See Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld record, or portion thereof, with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification).

[3] It is unclear why Cornucopia did not receive the Motion for Summary Judgment until March 8, 2017; it was filed on the Court's ECF system and went directly to Cornucopia's counsel's email February 2, 2017. *See* Def.'s Mot. for Summ. J. (Mot.) [Dkt. 14].

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is the typical vehicle to resolve an action brought under FOIA.  *See McLaughlin v. DOJ*, 530 F. Supp. 2d 210, 212 (D.D.C. 2008).  Under Federal Rule of Civil Procedure 56 summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Id*. at 248.

### B.  FOIA

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions.  *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  FOIA cases are typically and appropriately decided on motions for summary judgment.  *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd sub nom. Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981).  In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

A defending agency in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd sub nom. Sanders v. DOJ*, No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011). The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive records may exist, but whether the search itself was adequate. *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994).

Thus, to rebut a challenge to the adequacy of a search, an agency must show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986)). Agencies are not required to search every record system, but agencies must conduct a good faith, reasonable search of those systems of records likely to possess the requested records. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *overruled in part on other grounds*, 79 F.3d 1172 (D.C. Cir. 1996). An agency may prove the reasonableness of its search by a declaration by responsible agency officials, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *See Casey*, 656 F.2d at 738. Once an agency has provided such affidavits, the burden shifts to the plaintiff to demonstrate the lack

of a good faith search. *See Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). If a review of the record raises substantial doubt as to the reasonableness of a search, especially in light of "well-defined requests and positive indications of overlooked materials," then summary judgment may be inappropriate. *Founding Church of Scientology of Washington, D.C., Inc. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979).

## III.  ANALYSIS

### A.  Reasonableness of the Search

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency moving for summary judgment in a FOIA case must first demonstrate that it made a good-faith effort to search for responsive materials in a manner "reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Where an agency affidavit avers that a reasonable search was conducted, the agency is entitled to such a presumption of good faith. *See Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). An affidavit can be rebutted only when inadequate on its face or with evidence that the agency's search was not made in good faith. *See id.* A plaintiff cannot rebut the good faith presumption that attaches to an agency's affidavit "through purely speculative claims about the existence and discoverability of other documents." *Brown v. DOJ*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010). Hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *Oglesby*, 920 F.2d at 67 n.13.

Cornucopia first argues that the AMS search was inadequate because it did not provide records relating to the investigation into Shamrock until nearly four years after the initial FOIA request and nearly two years after AMS states the investigation ended. *See* Opp'n at 6; *see also* Reply at 10 ("AMS did not develop its formal decision concerning the Shamrock case until

7

July 2014.").  A delay in response time allows a requester to appeal in order to obtain requested records.  5 U.S.C. § 552(a)(6)(A)(i)(III)(aa).  Cornucopia appealed and, eventually, AMS turned over the responsive records.  While the delay may be extended, it is not an issue for which this Court can provide a remedy at this time, and does not invalidate the search.

Cornucopia also argues the search was unreasonable because of "major gaps" in the responsive records, including a lack of records indicating the outcome of negotiations between Shamrock and AMS and the unavailability of several records that are referenced in produced materials but not included.  Opp'n at 8-9.  AMS states the locations searched, why those locations were the ones reasonably likely to contain responsive records, and the search terms used.  *See* Michael 2d Decl. ¶¶ 4-8.  Cornucopia provides no basis to find that other records exist and should have been discovered in a reasonable search; its argument to that effect is merely speculation.  To determine the adequacy of a search, courts look to "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."  *SafeCard Servs., Inc.*, 926 F.2d at 1201 (citing *Meeropol*, 790 F.2d at 950-51; *Weisberg*, 745 F.2d at 1357).  An agency is not required to cross-reference documents listed on responsive records.  *See Steinberg*, 23 F.3d at 552 (holding that the FBI's search was still adequate even though it did not cross-reference documents mentioned in responsive records).  The fact that documents mentioned in the released records were not included in the agency response set does not itself indicate that the search was unreasonable and does not rebut the presumption of good faith afforded to the agency's declarations.  Therefore, even assuming *arguendo* that Cornucopia did not receive every record related to the Shamrock investigation, that assumption does not prove the inadequacy of the search.

To the contrary, FOIA require agencies to provide an affidavit "with reasonable detail" that includes "the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby*, 920 F.2d at 68. Cornucopia argues that AMS provided "only generalized and conclusory statements describing the systems of records searched" and that it did not search all the relevant systems. Opp'n at 8. In support, Cornucopia cites Mr. Michael's amended declaration. *See id.* (quoting Michael Am. Decl. ¶ 7 ("The agency searched all files likely to contain relevant documents.") and ¶ 8 ("[T]he agency conducted an additional search of its electronic records and located additional responsive information.")). The Court agrees that Mr. Michael's amended declaration provided insufficient information for the Court to determine if the search were adequate. However, Mr. Michael's second declaration, which was submitted with AMS's reply brief, contains the information necessary to evaluate the search. *See* Michael 2d Decl. ¶¶ 4-8. Based on both, the Court finds the search was "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

### B.  Objections to Withholdings from Records

In a FOIA action, a defendant must also demonstrate that any information withheld from disclosure is exempt and that the agency segregated non-exempt materials. *See* 5 U.S.C. § 552(a)(4)(B), (b). An agency may satisfy this burden by providing "a relatively detailed justification through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both." *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002) (internal quotations omitted); *see also Vaughn*, 484 F.2d 820. AMS redacted 673 records in part and released 2,135 in full. Of the redacted records, AMS applied Exemptions 5, 6, 7(c), 7(d), and 7(e).

### 1. *Unspecified or Non-existent Exemption*

Cornucopia objects to several records (pages Bates-stamped 002328-35) that it argues are not explained by AMS or were improperly redacted. *See* Opp'n at 11. Mr. Michael's second declaration addresses these pages, explaining that the redactions were not made for the FOIA search, but were in the record when it was located by NOP, and an unredacted version of the record could not be located. *See* Michael 2d Decl. ¶ 8 n.3; *see also* Reply at 23 n.10. Because these redactions were not part of the FOIA review but are in the underlying records, the failure to explain in the *Vaughn* Index does not indicate a FOIA violation.

Cornucopia also objects to several records that it claims AMS incorrectly identified as containing redacted information under Exemptions 5(1) and 5(2). *See* Opp'n at 11. This was a small error—which AMS acknowledges, Reply at 23 n.10—and was not so grievous that Cornucopia could not have recognized the basis for the exemption. The records are listed on the AMS amended *Vaughn* Index as containing redacted information under Exemption (5). *See* AMS Revised *Vaughn* Index [Dkt. 15-6] at 9.

### 2. *Exemption (5)*

Under 5 U.S.C. § 552(b)(5), an agency may protect "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." This pertains to records that would not be discoverable during litigation with the agency, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975), including records that would be protected under the attorney-client privilege, the attorney work-product privilege, and the executive deliberative process privilege. *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1121 (D.C. Cir. 1989). Exemption 5 is intended to "protect[] open and frank discussion

among those who make [agency decisions] within the Government." *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001).

AMS relies on the deliberative process privilege to withhold interagency records that contain:

> (i) NOP Investigator's written deliberative review and analysis of operator's organic certification inspection report;
>
> (ii) NOP Investigator's written deliberative notes prepared during and after an interview with a source and informant to a law enforcement action;
>
> (iii) portions of an interagency memoranda and emails from lower-level employee to her supervisor and other senior officials in the agency regarding her recommendations concerning the scope and the direction of the investigation;
>
> (iv) emails between NOP Managers and USDA Office of the General Counsel; and
>
> (v) draft enforcement action letter from certifying agent to operator between NOP Investigator and AMS Compliance and Analysis Investigator about weighing of enforcement action options and planning.

Reply at 8-9 (citing Michal Am. Decl. ¶ 15). For a record to be covered by the deliberative process privilege the record must be both (1) pre-decisional or antecedent to the adoption of agency policy and (2) deliberative, meaning it must actually be related to the process by which policies are formulated. *See Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978); *see also Am. Immigration Council v. Dep't of Homeland Security*, 905 F. Supp. 2d 206, 217-18 (D.D.C. 2012).

Cornucopia largely argues that the records are not pre-decisional because the Shamrock investigation was closed in 2010 or 2011 and the redacted records at issue were created on a later date. *See* Opp'n at 12-13. However, the letter that Cornucopia cites for the proposition that the Shamrock investigation closed in 2010 or 2011 only indicates that

Cornucopia's complaint against Shamrock was closed in 2010, not that all investigations into Shamrock were closed. *See* Fantle Decl. Ex. 2 at 9. AMS states that Shamrock was still under investigation until July 2014. Michael 2d Decl. ¶ 10. Thus, any records before July 2014 could well be pre-decisional, as the descriptions of the records demonstrate.

Cornucopia also argues that some of the records containing Exemption 5 redactions are not interagency memoranda because they were shared with Shamrock and/or Quality Assurance International (QAI). QAI is "a USDA-approved Accredited Certifying Agent" that "certif[ies] production and handling operations to the USDA organic standard." *Id.* ¶ 9. AMS argues that QAI operates as an agent of the USDA NOP when it issues and evaluates organic standard certifications. *See id.* Cornucopia does not dispute this point, but does refer to QAI as a "third part[y]." Opp'n at 12. Therefore, the draft notices of noncompliance submitted by QAI to NOP qualify as interagency records.

"[C]onsultants may be enough like the agency's own personnel to justify calling their communications intra-agency." *Klamath Water*, 532 U.S. at 12; *see also Fox News Network, LLC v. Dep't of the Treasury*, 739 F. Supp. 2d 515, 540 (S.D.N.Y. 2010) (finding that a federal reserve bank functioned enough like Treasury's own personnel during the relevant transactions to justify calling their communications intraagency). Based on Mr. Michael's representations about the relationship between the USDA and QAI, the Court finds that QAI functions as an agent of USDA and therefore, is "enough like the agency's own personnel" for records shared between the two to be considered interagency and qualify for Exemption 5. *See Klamath Water*, 532 U.S. at 12.

Next, Cornucopia challenges the sufficiency of the descriptions of exempt materials in the *Vaughn* Index, arguing AMS provides only "a very generalized statement

suggesting that release of these records would reveal ongoing policy discussions." Opp'n at 15. Courts focus on the function, not form, of a *Vaughn* Index and other supporting documents, such as agency declarations, to assess the sufficiency of a FOIA response. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) ("[W]e focus on the functions of the *Vaughn* index, not the length of the document descriptions . . . . [A]n agency may even submit other measures in combination with or in lieu of the index itself."); *see also Keys v. DOJ*, 830 F.2d 337, 349 (D.C. Cir. 1987) ("[I]t is the function, not the form, of the index that is important."). The affidavits, declarations, and *Vaughn* Index in combination must "give the reviewing court a reasonable basis to evaluate the claim of privilege," *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994) (internal quotation marks and citation omitted), by "provid[ing] a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

For each of the records containing redactions exempt under the deliberative process privilege, AMS includes a conclusory statement on its *Vaughn* Index that release of the information would revel ongoing policy discussions. Had AMS said no more, the Court would have agreed that its explanation was insufficient. However, there is more. In addition to the general statement, the *Vaughn* Index also includes more specific descriptions of each record and the analysis behind the redactions, averring that actions recommended in particular records were later adopted as policy or not and are, therefore, pre-decisional and deliberative. *See* AMS Revised *Vaughn* Index at 7-8. Additionally, Mr. Michael's second declaration provided further justifications for application of Exemption 5. *See* Michael 2d Decl. ¶¶ 11-12 (indicating the records include the weighing of different investigative options, "[t]he investigator's assessments,

conclusions and recommendations" which were not binding or final, and other "options and recommendations about the limit and scope of the investigation" intended to assist the final decision maker). Considering the entirety of AMS's supporting documentation, the Court finds that AMS has satisfactorily explained why the particular records are deliberative under Exemption 5.

Finally, Cornucopia challenges the claimed exemptions for attorney-client privilege, arguing that AMS fails to identify an attorney as party to the records and does not specify what about a record makes it an attorney-client communication. *See* Opp'n at 14. The Court disagrees. The *Vaughn* Index clearly states that the redacted records are "[e]mails between NOP Managers and AMS Office of General Counsel [(OCG)] Attorneys," AMS Revised *Vaughn* Index at 9, and Mr. Michael expounds upon that description in his second declaration explaining "[t]he withheld communications reflect legal advice sought from OGC concerning the settlement proposals and other aspects of the Shamrock investigation." Michael 2d Decl. ¶ 13.

### 3. *Exemptions 6 and 7(C)*

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The term 'similar files' is broadly interpreted, such that Exemption 6 protects from disclosure all information that 'applies to a particular individual' in the absence of a public interest in disclosure." *Lardner v. DOJ*, 638 F. Supp. 2d 14, 23 (D.D.C. 2009) (quoting *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)). The threshold is "fairly minimal," and "[a]ll information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained." *Washington Post Co. v.*

*HHS*, 690 F.2d 252, 260 (D.C. Cir. 1982) (quoting *State v. Washington Post*, 456 U.S. at 602) (internal quotation marks omitted).

Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (internal quotation marks and citation omitted); *see DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). The privacy interest at stake belongs to the individual, not the agency. *See Reporters Comm.*, 489 U.S. at 763-65; *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"). It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest. To satisfy, the public interest must be significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Similarly, Exemption 7(C) protects from disclosure information in law enforcement records[4] that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Courts apply a balancing test to determine whether disclosure is exempt under 7(C). Courts "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information."

---

[4] Law enforcement records include both criminal and civil investigatory and non-investigatory materials. *See Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002); *North v. Walsh*, 881 F.2d 1088, 1098 (D.C. Cir. 1989); *Rural Hous. All. v. USDA*, 498 F.2d 73, 81 & n.46 (D.C. Cir. 1974), *supp. op.* 511 F.2d 1347 (D.C. Cir. 1974). The investigation at issue was conducted by AMS to enforce civil legislation that set requirements for organic certifications and, therefore, was conducted for law enforcement purposes. *See Jefferson v. DOJ*, 284 F.3d 172, 177 (D.C. Cir. 2002).

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (internal quotations and citations omitted).

AMS seeks to exempt the names and identifying information of individuals involved in conducting inspection services under Exemptions 6 and 7(C). Additionally, AMS claims Exemption 6 for the redaction of "[s]ignatures of private individuals," "[p]ersonal email addresses of private individuals," "[p]ersonal telephone numbers of private individuals," and "[n]ames and identifying information of private individuals discussed as potential providers of voluntary mediation services." AMS Revised *Vaughn* Index at 3-6; *see also* Michael Am. Decl. ¶¶ 18-25. Cornucopia challenges these explanations, arguing "[i]t is important for Cornucopia, and the public, to know whom at USDA was involved in responding to Cornucopia's 2008 complaint, and directing and overseeing and conducting subsequent investigations, and the agency staff that were ultimately shaping the resolution of the case and any settlement agreement and whether civil penalties were addressed." Opp'n at 19-20. Cornucopia also objects to withholding the name of a mediator.

Because individuals have a significant privacy interest "in avoiding the unlimited disclosure of his or her name and address," the Court turns to Cornucopia's claim that the public interest is served by the disclosure of such information. *Horner*, 879 F.2d at 875. "[T]he only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 46 (D.C. Cir. 1999). AMS argues that disclosing the names and other identifying information of private individuals does not allow the public to learn more about how AMS conducted its investigation into Shamrock.

Cornucopia has not met its burden of demonstrating how disclosure of personal identifying information would allow the public to "learn more about how the investigation was conducted," but has instead merely concluded that the information is "important" to the public. Opp'n at 19-20. Because Cornucopia has not identified a public interest sufficient to outweigh the privacy interest of the individuals, the Court finds AMS has properly withheld the information under Exemptions 6 and 7(C).

### 4. Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). A source's confidentiality is determined on a case-by-case basis, and a court must determine "whether the particular *source* spoke with an understanding that the communication would remain confidential." *DOJ v. Landano*, 508 U.S. 165, 172 (1993) (emphasis in original). "A source is confidential within the meaning of Exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995). The nature of the investigation and the informant's relation to it are the most important factors in determining whether implied confidentiality exists. *Landano*, 508 U.S. at 179-80.

AMS redacted the name and identifying information of third parties conducting inspection services on behalf of USDA because those third parties were providing information

for law enforcement purposes "with the understanding that the information [and their identities] would remain confidential."  Michael 2d Decl. ¶ 17; *see also* AMS Revised *Vaughn* Index at 2-3. Cornucopia challenges the claim of confidentiality, arguing that QAI is a private company that assists its clients with maintaining USDA organic certifications and in that role must expect the federal government to seek information concerning adherence to certification standards.  *See* Opp'n at 23.  Cornucopia contends that the nature of the relationship between USDA and QAI necessarily means that an expectation of confidentiality is unlikely.  *See id*.

An agency must do more than simply state that a source provided information on a confidential basis.  *See Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1101 (D.C. Cir. 2014).  If an agency does not "present probative evidence that the source did in fact receive an express grant of confidentiality," then it must "point to more narrowly defined circumstances that support the inference of confidentiality."  *Id*.  Here AMS states that

> The third-party inspectors transmitted this information to NOP with the understanding that the information would remain confidential. To protect inspectors from reprisal for investigating violations and reporting them to NOP, it is crucial that their identities remain confidential throughout the process.  NOP believes that it implies through its actions and its procedures that inspector's information will be kept confidential and will only be used for official purposes.

Michael 2d Decl. ¶ 17.

Courts should consider four factors in assessing implied assurances of confidentiality:

> the character of the crime at issue, the source's relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency and typically communicates with the agency only at locations and under conditions which assure the contact will not be noticed.

*Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).  The "crime" at issue is a failure to comply with USDA organic certification requirements, which does not weigh in favor of a finding of

confidentiality because there is no indication that companies seek retribution from individuals who investigate organic certifications. QAI has a relationship with both the government agency and the potential violator, as it serves to assist the potential violator with maintaining certification and also works as an agent of USDA in reporting non-compliance. AMS has provided no evidence as to the manner in which information was disclosed from QAI employees and its supporting documents do not allow the Court to infer that they provided the information under an implied assurance of confidentiality.

However, the information redacted under Exemption 7(D) was already found properly redacted under Exemption 6 because it includes that names and addresses of private individuals. The Court notes that Cornucopia already knows the identity of QAI. While the Court does not find on this record that the information was properly withheld under Exemption 7(D), it was properly withheld under Exemption 6.

5. *Exemption 7(E)*

Exemption 7(E) protects the disclosure of records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E)'s requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'" *Public Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 204-05 (D.C. Cir. 2014) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)). "To clear that relatively low bar, an agency must demonstrate only that release of a document might increase the risk 'that a law will be

violated or that past violators will escape legal consequences.'" *Id*. at 205 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

AMS withheld "NOP computer database structures and investigative file organization" and an "NOP spreadsheet table designed and drafted in the course of a law enforcement investigation" under Exemption 7(E), AMS Revised *Vaughn* Index at 10-11, arguing that the information "would reveal techniques and guidelines that NOP investigators employ in their investigations of potential violations of the Organic Food Production Act of 1990, 7 U.S.C. § 6501 *et seq*., and the USDA organic food regulations, 7 C.F.R. § 205 *et seq*." Mot. at 18. AMS argues that public disclosure of the information would permit "violators or potential violators" to "evade or circumvent the law by anticipating the steps taken by NOP investigators in the process of carrying out investigations." *Id*. at 19.

Cornucopia argues that Exemption 7(E) is intended to protect investigatory techniques, procedures, or guidelines that are "obscure" or "secret" and that AMS has not provided any evidence to demonstrate that its Shamrock investigation was intended to be clandestine or was not routine. Opp'n at 24-25. However, FOIA does not require an agency to provide actual evidence that the techniques and guidelines at issue are "obscure." Instead the agency must only "logically explain how the data could help [others] circumvent the law." *Blackwell*, 646 F.3d at 42. There is no evidence to support Cornucopia's assertion that the techniques at issue are already known to the public and AMS, to the contrary, has explained that the methods used to investigate compliance are finely tuned to the type of commodity, production method, and handling and business practices at issue. *See* Michael 2d Decl. ¶ 19. Therefore, AMS logically explains that knowledge of its methods with respect to the Shamrock investigation would shed significant light on the techniques used in a similar investigation and

could help similar producers "evade the requirements of USDA organic regulations." *Id*. AMS has met the relatively low burden of Exemption 7(E).

### C. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *see also Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). To demonstrate that all reasonably segregable material has been released, the agency must provide a detailed justification rather than conclusory statements. *Mead Data Cent.*, 566 F.2d at 261.

AMS states that it conducted a "line-by-line review" to identify any segregable information. Michael Am. Decl. ¶ 12. AMS did not withhold any records in their entirety and identified the relevant exemption for all redacted information. *See id.* ¶¶ 13-14. Cornucopia challenges the sufficiency of AMS's description of the analysis undertaken to ensure all reasonably segregable information was provided. It argues that AMS provides only conclusory statements that it complied with the segregability requirement of FOIA. *See* Opp'n at 25-26. AMS responds that it has met its burden by providing a detailed *Vaughn* Index which identified the withheld portions of the records and identified the relevant exemption. *See* Reply at 22.

To enable a court to perform a review of segregability the agency must provide "not only a detailed justification of the reasons for withholding information, but also a description of the document from which the information was redacted." *Chesapeake Bay Found., Inc. v. U.S. Army*

*Corps of Eng'rs*, 677 F. Supp. 2d 101, 109 (D.D.C. 2009); *see also Mead Data Cent.*, 566 F.2d at 260-61. In addition to Mr. Michael's declaration, which affirms that a line-by-line segregability analysis was conducted, AMS provided a revised *Vaughn* Index which described each type of record that contained redacted information, the exact type of information that was redacted, and the relevant exemption justifying the redaction. *See* Michael Am. Decl. ¶¶ 11-14; AMS Revised *Vaughn* Index. Taking those submissions together, the Court finds that AMS has adequately explained that all segregable information has been provided and only exempt information was redacted.

### D. *In Camera* Review

Trial courts are afforded broad discretion to "examine the contents of" requested records "in camera to determine whether such records or any part thereof shall be withheld." 5 U.S.C. § 552(a)(4)(B); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998). However, "'[i]f the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.'" *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

Cornucopia asks the Court to review *in camera* 34 pages of redacted records released by AMS to determine if it properly applied the FOIA exemptions and if there is non-exempt information that should be released. Because this case is not one where the agency's declarations are "'insufficiently detailed to permit meaningful review of exemption claims,'" *in camera* review is unnecessary. *Plunkett v. DOJ*, No. 11-341, 2015 WL 5159489, at *12 (D.D.C. Sept. 1, 2015) (quoting *Quiñon*, 86 F.3d at 1228) (declining *in camera* review because agency's affidavits sufficiently explained its reasons for redacting information under FOIA exemptions).

## IV. CONCLUSION

The belated complete Vaughn Index and explanations by AMS have unnecessarily prolonged this case. Cornucopia is a savvy litigant and might not have beaten a dead horse if AMS had been more fulsome to begin with. Nonetheless, on the basis of the full record, the Court will grant the AMS motion for summary judgment and deny Cornucopia's motion for summary judgment and *in camera* review. A memorializing Order accompanies this Opinion.

Date: October 17, 2017

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge